THE STATE v. PICKETT, *Appellant.*

DIVISION TWO.

**Felonious Assault**: EVIDENCE : INSTRUCTIONS. The evidence in this case *held* to support a conviction of a felonious assault under Revised Statutes, 1879, section 1262, and the instructions to have properly stated the law on the issues in the case.

The State v. Pickett.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

AFFIRMED.

*C. E. Burnham* for appellant.

*John M. Wood,* Attorney General, for the State.

THOMAS, J.—Defendant was indicted in the Jackson county criminal court, at the September term thereof for 1889, for felonious assault under section 1262, Revised Statutes, 1879, upon one Nannie Stewart, was tried, found guilty and sentenced to imprisonment in the penitentiary for ten years. She has filed no statement or brief.

The evidence was substantially as follows : Dr. L. G. Taylor testified : "Nannie Stewart called at my office very early in the morning of June 27, 1889 ; I don't know where she came from; I saw her in the drugstore all cut up; it was probably half past six or seven o'clock when I saw her ; I afterwards visited her at Mrs. Dibbles', at 926 Woodland avenue ; she was the most seriously carved up person I ever saw ; there were at least nineteen wounds on her person, thirteen of which were deep and had to be sewed up. A number of the wounds were made in the face and back of the head ; there were several cuts on her shoulders and arms and hands, and across the back, right in the small of the back; the cuts on her back were not very deep ; she had a corset on and the cuts were through that corset ; I saw the corset afterwards and it was very much ' nicked. ' " Dr. W. Ciuen testified to substantially the same facts that were testified to by Dr. Taylor.

Sophia Ford testified : "I am acquainted with Nannie Stewart ; she ( Nannie Stewart) lived right across the street from Mrs. Dibbles' ; I saw defendant about six o'clock in the morning of the difficulty coming down the

street; she was between Ninth and Tenth on Highland avenue; she asked me if Nannie was at home; I told her I did not know whether she was or not; she then went down the street; a short time afterward (not over fifteen minutes) I came back and saw Nannie and defendant; they were sitting down at the door talking; I went on up stairs into my house; I did not see or hear anything of the difficulty; when I next saw Nan, she came to my house and asked me if I would go with her to the drugstore; that was after the cutting; she was very badly cut; I went with her to the drugstore; on the way to the drugstore she didn't talk much; she was weak and not able to talk; all she said was, that she was going to have her arrested."

Nannie Stewart testified: "The difficulty between me and defendant occurred at 926 Highland avenue, at the house of Mrs. H. B. Dibbles; Mrs. Dibbles lived in Kansas City, Jackson county, Missouri; and the difficulty took place the week before the fourth of July; Hannah Pickett, the defendant, came there on Thursday morning at six o'clock and called me; I was in bed asleep at the time, and woke up and looked out, and the defendant told me to come out, she wanted to see me; and I replied, 'all right,' and afterward put on my clothes and started out of the door barefooted; the defendant said to me, 'Put on your clothes, the dew is very heavy; don't come out that way.' So I slipped on my shoes, and went out and closed the door after me. The door locked itself as it closed, so I had no way of getting back. Defendant asked me to walk out with her, as she didn't want the white folks to hear what she had to say; we went half a block west, and as we were coming back defendant said, 'Nan, I heard you said I stole a trunk full of fine clothes from you.' I replied that I had no fine clothes, but a trunk of good clothes; I said, 'You know they were my clothes and there is no use to fuss about it then;' defendant then said, 'All right,' and said she heard that I said I was going to

take my bracelet off of her sister ; I replied, no, I would not take it off, but if I saw her with it I would take her for it ; defendant said, 'You won't do anything of the kind,' and said, 'I am going to wear the bracelet to the Indian show to-night ; come down and get it ;' I replied, 'that if you wear it down there I will come and get it.' Defendant said, 'You come and get it.' And I told her I would be there. Nothing more was said by either of us. I sat there with my hand on my jaw, and defendant cut me in the face with a razor ; I threw up my hand, and defendant cut one of my fingers off ; and defendant cut me on the arms and in the back in six places ; I ran across the street after I was cut in the face, and fell down, and when I fell down defendant cut me in the back ; I got up from there and went into Sophia's yard, and defendant got me by the collar and said, ' I mean to kill you,' and came up there and pulled me out of the yard ; then I went into Bulware's yard, and defendant grabbed and cut me there and said, ' If you say a word I will kill you ; I meant to kill you this morning ; if you want to have me arrested you can do so, I meant to kill you.' I told her I was going in there ; that there was a doctor lived there ; I didn't tell her it was an officer. Defendant lived over a mile from that place ; her mother lived out in Pat Stewart's pasture, where she was afterwards arrested. When I went to Bulware's yard Mrs. Bulware looked out the window and saw us and said to defendant not to strike me any more, and told her to leave there ; and defendant then went off. During the difficulty I did not strike, or attempt to strike, defendant ; I was trying all the time to get away from her."

Annie Rickert testified : "I know Nannie Stewart, when I see her ; she worked at Mrs. Dibbles' ; Mrs. Dibbles' house is just across the street from Bulware's house ; I saw Nannie Stewart the morning she was cut ; and saw defendant ; she was just across the street ; she said, she would have no nigger fooling with her ; she would kill her ; she came there with the intention of

killing her.   She said, to have her arrested; she didn't care.   Nannie Stewart went to Bulware's and from there to Mrs. Dibbles' and rang the door bell; then she went to Gossart's house, and from there Sophia went with her to the drugstore."

T. S. Bulware testified:   "I arrested defendant; I found her in Pat Stewart's pasture at her mother's house; she was changing her clothes at the time; she was dressing when I found her; I examined her clothes; the clothes she took off were bloody; I told her what she was arrested for, and she did not deny it; she said she did the cutting; I asked her where the razor was she cut her with and she said she had lost it.   I then searched around a little and raised up the bedclothes and found the bloody razor under the tick; there were two ticks on the bed; I found the razor between them; the razor was bloody."   The razor was then identified and introduced in evidence.   Defendant said afterward: "I got the razor all right."

The testimony introduced on the part of defendant, except that of the defendant herself, was as to some threats alleged to have been made by the prosecutrix some six months before when she was ordered by defendant to vacate a room of defendant's which she had been occupying.   The threat was, she saying at the time she left the room, that she would give up the room, but that she would meet her, defendant, out after that and get even with her.

Dennis Gordon testified on the part of defendant that the prosecutrix, after the cutting said, "that, had she hit her with that rock, the undertakers would have come and got Hannah, and the officers would have come and got her."

Defendant testified:   That she was on her way home Thursday morning, and Nannie Stewart was standing at the corner of Highland just across the street from her, and said, "You God-damn bitch, what made you talk about me for; about you wearing better

dresses than me?" I said, 'I never said it; it wasn't necessary to have a fuss about it.' I told her I had not said anything about her. She said, 'You done exposed my name, and I am going to fix you.' And she up and threw three rocks at me, and then I cut her. I didn't go there with the intention of cutting her." She also testified that the prosecutrix had threatened her.

The court, in its instructions, in an exceptionally clear and concise manner, covered every issue presented by the evidence including that of self-defense. The jury found defendant guilty as charged, and we think there can be no question about the justness of the verdict. She sought the prosecuting witness and cut her with a razor in a most cruel and brutal manner. Ten years' imprisonment is none too severe for the crime she committed. Finding no error in the record, the judgment is affirmed. All of this division concur.